No. 15,275.

CARMEAN *v.* THE PEOPLE.
(134 P. [2d] 1056)

Decided February 23, 1943.

Mr. JOHN W. ELWELL, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*In Department.*

Mr. JUSTICE BAKKE delivered the opinion of the court.

THIS cause, entitled "In the Matter of the People in the Interest of Jacqueline Carmean" is before us on an application for supersedeas from Pueblo county, asking that we review and reverse a judgment of the county (Juvenile) court, finding the said Jacqueline Carmean to be a delinquent child and committing her to the State Industrial School for Girls at Morrison. December 10,

we ordered her release from the industrial school, and committed her to the custody of her grandmother in Pueblo, pending the disposition of the cause here. Because of the partial consideration already given this matter and the brevity of the record, we dispose of it on the application for supersedeas.

The petition, signed and verified by Laura Andrews Taylor, hereinafter referred to as Miss Taylor, director of census and attendance of the Pueblo School District No. 1, recites that Jacqueline Carmean, age 14½ years, "did then and there violate the law of this state in regard to school attendance. That she is growing up in habits of idleness and crime." Her mother and grandmother were served with summons and the mother appeared at the hearing. The testimony regarding a trial by jury was as follows: "Judge Glover: She is entitled to a jury trial if she wishes to have one, * * *. Mrs. Carmean: * * * I want to know what you intend to do. Judge Glover: I can't tell you that. We would have to have the evidence and then I would make a finding and order. We usually have a hearing right in here this way. Mrs. Carmean: That is all right."

Miss Taylor testified that beginning in May, 1941, Jacqueline began to fall down in her attendance. "We went there many, many times * * * and I will say I always found Jacqueline at home * * *. She was out of school very many, many times." In 1942, according to Miss Taylor's evidence, she quit before school was out. Miss Taylor admitted that her only contact with Jacqueline "is in regard to attendance."

The difficulty regarding Jacqueline's school attendance seems to have arisen when the family moved from the Park School District to the Hinsdale School District, where her mother had bought and was operating a bath house. When questioned as to Jacqueline's attendance at Hinsdale her mother stated: "She didn't like Hinsdale very well and I don't know as I blame her." She also testified that the reason Jacqueline did not go to school

the last ten days December, 1941 was because she (Jacqueline) was ill.

It is also apparent from the record that there was confusion in the mother's mind as to what school Jacqueline should attend. She stated she had called Mr. Porter, presumably principal at the Park Hill school, regarding Jacqueline's attending there, and that he had replied that "he would have to think it over."

The crux of the situation developed when, according to the record, Jacqueline had a fight with her mother and returned to the home of her grandmother where she hoped to reenter Park Hill, but was denied access thereto. She did not want to go to Hinsdale and commenced staying out nights until "three or four o'clock in the morning." Her mother testified that Jacqueline was "rather strong willed and bull headed."

The Judge interrogated Jacqueline as follows: "Isn't this true? Looking back over a period of three years—hasn't most of the trouble been because the grandmother would say one thing and your mother would say another and maybe the aunts say another and you didn't know who to obey?" After being interrupted by her mother, Jacqueline replied: "I can't answer the question."

Following a brief exchange of words between mother and daughter, the Judge asked: "Anything else you want to say?," to which Jacqueline replied, "No." Whereupon, the court immediately found Jacqueline to be "a delinquent child as stated in the petition," and ordered that she be committed to the Girls' Industrial School.

■ The principal grounds upon which reversal is sought is the insufficiency of the evidence and failure to have a jury.

In all the record there is no suggestion of what law the girl violated, and we are unable to supply this information. She was without counsel and the court did not attempt to advise her. The Attorney General contends that the statute applying is section 263, chapter

146, '35 C.S.A. However, that section relates to the duties of parents in regard to sending their children to school and the cross-reference on this section is section 276, chapter 146, '35 C.S.A., entitled, "Parent required to send child to school * * *." It is true that section 266, chapter 146, '35 C.S.A., states that a child who fails to attend school in accordance with section 263, supra, shall be deemed "a juvenile disorderly person, and be subject to the provisions of sections 263 to 274 of this chapter." (Not the provisions of section 53, chapter 33, '35 C.S.A., relating to delinquent children invoked here.)

The other allegation in the petition is that the child is growing up in habits of idleness and crime. Unless it can be said that the unsolicited statement of the mother that the girl stayed out until three or four o'clock in the morning amounts to evidence that she was "growing up in habits of idleness and crime"— and we say that such statement by itself is no such evidence—then the record is silent as to any evidence upon which the Judge could justifiably find this child delinquent.

We think the evidence was clearly insufficient to justify the court's findings, hence, it is unnecessary to pass upon the suggested error of his failure to call a jury.

We sympathize with the efforts of all juvenile judges to conduct their hearings of this kind in an informal manner to the end that the interests of the child may be protected, but if there was culpability in this case, it was not against the child as is indicated by the above quoted question propounded by the court. It would seem that under a reasonable construction of any of the applicable statutes the child should be granted probation on a first offense.

The judgment is reversed.

Mr. Chief Justice Young, Mr. Justice Burke and Mr. Justice Jackson concur.